IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Pacific Space Design Corporation, | : | |
| | : | Chief Judge Dlott |
| Plaintiff, | : | |
| | : | Case No. 1:13-cv-00460 |
| v. | : | |
| | : | ORDER GRANTING DEFENDANT'S |
| PNC Equipment Finance, LLC, | : | MOTION FOR JUDGMENT ON THE |
| | : | PLEADINGS |
| Defendant. | : | |

This matter is before the Court on Defendant's Motion for Judgment on the Pleadings.
(Doc. 12.)  Plaintiff Pacific Space Design Corporation ("Pacific") brought this action against
Defendant PNC Equipment Finance LLC ("PNC") alleging breach of contract, unjust
enrichment, and conversion.  (Doc. 2.)  Defendant moves for judgment on the pleadings under
Federal Rule of Civil Procedure 12(c) on the ground that Plaintiff fails to state a claim upon
which relief can be granted.  For the reasons that follow, the Court **GRANTS** Defendant's
Motion.

I.      BACKGROUND

The factual background described in this section is based largely on allegations made by
the parties in Defendant's Motion for Judgment on the Pleadings and Plaintiff's Response.  As
explained below, the Court's analysis of Defendant's motion is based only on the facts alleged in
the Complaint, Answer, and incorporated exhibits.  However, as the Complaint is somewhat
lacking in background information, the Court provides the following brief synopsis of the events
leading to this lawsuit purely to provide context for the Court's analysis.

In 2005, Pacific entered into a contract with Defendant National City Commercial Capital Corporation (National City) to finance the lease of certain woodworking equipment.  The terms of the contract, which are discussed in greater detail below, established a sixty-month initial lease term during with Plaintiff was required to make monthly payments.  At the end of the sixty-month period, Plaintiff had the option to purchase the equipment at a set price, terminate the lease and return the equipment, or do nothing, which would result in an automatic renewal of the lease for an additional twelve-month term and thereafter for successive one-month terms.

During the course of the lease, Plaintiff's lease payments were automatically withdrawn from Plaintiff's bank account on a monthly basis.  In or around 2008, Defendant PNC merged with National City, assuming National City's assets and contracts, and Pacific continued to make lease payments via automatic withdrawal.  The initial sixty-month lease period ended in May 2010.  Allegedly unbeknownst to Pacific, the company continued making lease payments until February 2013, thirty-four (34) months after initial sixty-month lease period, when it contacted PNC about the lease.[1]  Thereafter, PNC sent Pacific a "Bill of Sale," transferring title of the equipment to Pacific.  Pacific now sues PNC for breach of contract, unjust enrichment, and conversion stemming from the thirty-four months Pacific continued to pay PNC after the expiration of the initial sixty-month lease period.  Pacific claims it is entitled to $100,076.98 in damages, the calculated amount of "overpayments" Pacific alleges it made to PNC following May 2006.  In its Motion for Judgment on the Pleadings, PNC states that there is no set of facts Pacific can prove that would demonstrate PNC committed a breach of contract, was unjustly enriched, or committed conversion.

---

[1] The events precipitating the termination of payments in February 2013 are somewhat unclear.

## II.    LEGAL STANDARD

Defendant moves pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings.  The standard for adjudicating a Rule 12(c) motion is the same as that for adjudicating Rule 12(b)(6) motion.  *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007).  A district court "must read all well-pleaded allegations of the complaint as true."  *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).  In addition, a court must construe all allegations in the light most favorable to the plaintiff.  *Bower v. Federal Exp. Corp.*, 96 F.3d 200, 203 (6th Cir. 1996).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  To withstand the dismissal motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action."  *Id*. at 555.  The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."  *Weiner,* 108 F.3d at 88.  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  The Court does not require "heightened fact pleading of specifics, but only enough to state a claim for relief that is plausible on its face."  *Id*. at 570.

In ruling on a Rule 12(c) motion, the court considers all available pleadings, including the complaint and the answer.  Fed. R. Civ. P. 7(a) and 12(c).  Documents attached to the pleadings as exhibits are considered incorporated therein and may be considered in evaluating a Rule 12(c) motion.  *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes.");  *Commercial Money Ctr., Inc. v. Ill. Union*

*Ins. Co.*, 508 F.3d 327, 335 (6th Cir.  2007) ("[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss").  These may include documents attached to the defendant's answer when they are integral to the claims and the authenticity of the documents is not disputed.  *See, e.g.*, *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (considering emails attached to the defendant's answer when they were integral to the negotiations at issue because "[o]n a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.' ") (quoting *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009)); *see also Fraenkel v. Messerli & Kramer, P.A.*, No. Civ. 04–1072, 2004 WL 1765309, at *2 (D. Minn. July 29, 2004) (in an FDCPA case, considering the complaint, the answer, and letters referenced in the answer when granting debt collector's motion for judgment on the pleadings when the plaintiffs did not dispute the content or authenticity of the letters).

## III.    ANALYSIS

### A.    Facts Alleged in the Pleadings

The Complaint alleges that in 2005, Pacific contracted with Defendant[2] to finance the lease of manufacturing equipment, valued at $170,220.00.  (Complaint ¶ 1 and exhibits,[3] Doc 2 at PageID 15, 17–18.)  Though not addressed explicitly in the body of the Complaint, there are several contract terms that are directly applicable to Plaintiff's claims, as discussed in greater detail below.[4]  The contract, titled "Lease Agreement" and hereafter referred to as the "Agreement," provides for an initial lease term of sixty months, with a monthly lease payment of

---

[2] The lessor named in the contract is National City.   As indicated *supra*, at some point after the execution of the contract, Defendant PNC merged with National City, assuming National City's assets and contracts.

[3] The exhibits attached to the Complaint are not labeled or numbered in any manner.

[4] Plaintiff attached a copy of the front of the Agreement to the Complaint, but Plaintiff omitted the second page or back of the Agreement, which contains the bulk of the terms and conditions applicable to the lease.  Defendant attached the full Agreement as Exhibit 1 to the Answer.

$3,154.18.  (Answer Ex. 1, Doc. 7-1 at PageID 31.)   Pacific agreed to pay, at the time of signing

the Agreement, an initial payment of $7,1010.34, comprised of a two-month advance lease

payment ($6,308.36), "[s]ales/use tax" on the advance lease payment ($551.98), and a one-time

documentation fee ($150.00).  (*Id.*)  The Agreement was executed by a representative of

National City and by the president of Pacific.  Just above the signature line, the Agreement states

that:

> BY SIGNING THIS LEASE: (i) YOU [the Lessee]
> ACKNOWLEDGE THAT YOU HAVE READ AND
> UNDERSTAND THE TERMS AND CONDITIONS ON THE
> FRONT *AND BACK* OF THIS LEASE, (ii) YOU AGREE THAT
> THIS LEASE IS A NET LEASE THAT YOU CANNOT
> TERMINATE OR CANCEL, YOU HAVE AN
> UNCONDITIONAL OBLIGATION TO MAKE ALL
> PAYMENTS DUE UNDER THIS LEASE, YOU CANNOT
> WITHHOLD, SET OFF OR REDUCE SUCH PAYMENTS FOR
> ANY REASON, . . . (v) YOU CONFIRM THAT *YOU DECIDED
> TO ENTER INTO THIS LEASE RATHER THAN PURCHASE THE
> EQUIPMENT*  FOR THE TOTAL CASH PRICE. . .

(*Id.* (emphasis added).)

Also appearing on the front of the Agreement is an "END OF LEASE PURCHASE

OPTION," establishing a fixed price purchase option of $17,022.00, a price amounting to ten

percent of the value of the equipment.  (*Id.*)  The back of the Agreement sets forth additional

terms, including Paragraph 12, titled "PURCHASE OPTION: AUTOMATIC RENWAL," which

establishes the following process for exercising the purchase option, terminating the agreement,

or renewing the lease:

> If no default exists under this Lease, you [the Lessee] will have the
> option at the end of the initial or any renewal term to purchase all
> (but not less than all) of the Equipment at the Purchase Option
> price shown at the front of this Lease, plus any applicable taxes.
> Unless the Purchase Option price is $1.00, you must give us [the
> Lessor] at least 60 days written notice before the end of the initial
> term that you will purchase the Equipment or that you will return

the Equipment to us.  *If you do not give us such written notice or if you do not purchase or deliver the Equipment in accordance with the terms and conditions of the Lease, this Lease will automatically renew for an additional 12 month term and therefore renew for successive one month terms until you deliver the Equipment to us.*  During such renewal(s) the Lease Payment will remain the same.  We may cancel an automatic renewal term by sending you written notice 10 days prior to such renewal term. . . .Upon payment of the Purchase Option price, we shall transfer our interest in the Equipment to you "AS IS, WHERE IS" without any representation or warranty whatsoever and the lease will terminate.

(*Id.*, Doc. 7-1 at PageID 32 (emphasis added).)

Contrary to the plain language of the Agreement, the Complaint alleges that the Agreement "terminated by its own terms after 60 months, or May, 2010."  The Complaint also alleges that "[t]hrough inadvertence, Plaintiff continued to pay on the lease contract until at least February 2013."  (Complaint ¶¶ 3–4, Doc. 2 at PageID 15.)   As a result, "Defendant continued to accept payments long after the lease contract had been paid, and well after the equipment had been paid off and title transferred," resulting in an alleged overpayment of $100,076.98.  (*Id.* ¶¶ 5, 7, Doc. 2 at PageID 15.)

Paragraph 5 of the Complaint states that "Transfer of title was officially acknowledged on March 1, 2012 (Copy attached)."  (*Id.* ¶5, Doc. 2 at PageID 15.)  Plaintiff does not specifically identify the exhibit or exhibits to which it refers in Paragraph 5.  (*Id.*)  There are two documents relating to the alleged transfer of title attached to the Complaint.  The first is an invoice dated February 28, 2013 that references the Agreement number and states a "Buyout to OWN" price of $3,438.07."  (*Id.* at PageID 19.)  The second is a Bill of Sale dated March 1, 2012.  (*Id.* at PageID 20.)  The dates on the two documents are inconsistent, and Plaintiff does not allege when it actually received those documents or title to the equipment in question.

6

**B.    Breach of Contract**

Pacific claims that the Lease Agreement with PNC terminated in May 2010 and that PNC's acceptance of $100,076.98 in continued payments, unbeknownst to Pacific, constitutes a breach of contract.  In its Motion for Judgment on the Pleadings, PNC contends that Pacific's Complaint fails to present any fact that supports the claim PNC breached a contractual duty. PNC states that it could not have breached the Agreement by accepting payments after the initial sixty month lease because the Agreement compelled Pacific to make such payments.

"Under Ohio law, contract interpretation is a matter of law when a contract's terms are clear and unambiguous." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006).  "To establish a breach of contract, a plaintiff must show that a contract existed, the plaintiff performed, the defendant breached, and the plaintiff suffered damages." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006).

In the instant case, the language of the Agreement pertaining to termination of the lease is unambiguous.  Pursuant to Paragraph 12, at the conclusion of the sixty-month initial lease period, Pacific could have terminated the lease in one of two ways.  First, Pacific could have provided PNC with sixty days written notice of its intent to return the equipment.  Second, Pacific could have provided PNC with sixty days written notice of its intent to purchase the equipment.  Pacific does not allege that it took either step.  Accordingly, pursuant to the plain terms of the agreement, the lease automatically renewed until Pacific took the necessary steps to terminate it.  Pacific alleges that through "inadvertence," it continued to make lease payments. Plaintiff's own failure to take the steps required under the Agreement to terminate the Agreement, even if due to neglect or inadvertence, does not equate to a breach of contract on the

part of Defendant. Plaintiff pleads no facts to suggest that Defendant took any action in breach of the Agreement or that Defendant failed to fulfill its duties under the Agreement.

Perhaps recognizing that it cannot prove breach of contract under the plain language of the agreement, Plaintiff devotes most of its Memorandum Opposing Defendant's Motion for Judgment on the Pleading, to an argument that the "Lease Agreement" between PNC and Pacific is not actually a lease, but would instead be considered a "conditional sale" under the Uniform Commercial Code. Pacific believes that structure of the Agreement conferred ownership of the Equipment to Pacific after the end of the sixty month lease. Accordingly, Pacific contends PNC breached contract by accepting payments after the lease allegedly ended.

In support of its argument, Plaintiff relies heavily on a 1990 Ohio Court of Claims opinion, *Celebrezze v. Tele-Communications, Inc.*, 62 Ohio Misc. 2d 405, 601 N.E.2d 234 (Ohio Ct. Cl. 1990), that was vacated in 1991. In that opinion, the court notes that:

> The problems attendant to distinguishing a lease from certain installment sales are not new ones and the issue has been the subject of litigation in American courts for some time. A perusal of the literature indicates that this issue has arisen in a number of specialized legal contexts. Whether a transaction is a sale or a lease has affected the rights of the parties under the laws of taxation, secured transactions, bankruptcy, and the Truth In Lending Act.

*Id.* at 412–13, 601 N.E. 2d at 238 (internal citations omitted). The court did not indicate, and this Court finds no support for the contention, that the characterization of a contract as a lease or as an installment or conditional sale would alter the plain language of the contract. Id. at 411, 601 N.E.2d at 238 ("The terms of the agreement speak for themselves as invocations of particular law; and plaintiffs cannot, in the guise of challenging the character of the agreement, seek, by way of mere parol evidence, to vary those terms to which the parties have agreed.").

The question of whether the Agreement should be characterized as a lease or conditional sale under the Uniform Commercial Code is irrelevant to Plaintiff's claims in this case.  That characterization would not change the plain terms of the Agreement or alter Plaintiff's duties under that agreement with respect to terminating the lease or exercising the purchase option. Pacific's real argument appears to be that interpreting the Agreement pursuant to its plain terms would be unfair to Plaintiff because the total amount of money Pacific paid to PNC under the Agreement before it terminated the lease and obtained title of the equipment amounted to more than the fair market value of the equipment at issue.  The Court agrees that the automatic renewal of the lease worked to Defendant's advantage.  However, that renewal occurred because of Plaintiff's own failure to act rather than because of a breach of the terms by Defendant.  The Court cannot rewrite the plain terms of the Agreement to remedy a perceived imbalance.  *See Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 362, 678 N.E.2d 519, 526 (Ohio 1997) ("It is not the responsibility or function of [a] court to rewrite the parties' contract in order to provide for a more equitable result.  A contract does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto." (internal quotation marks omitted)); *Packer, Thomas & Co. v. Eyster*, 126 Ohio App. 3d 109, 116, 709 N.E.2d 922, 927 (Ohio Ct. App. 1998) ("Parties to a contract in a commercial or noncommercial setting should be free to enter into whatever type of relationship they desire.").  Even when viewing all well-pleaded allegations in Plaintiff's favor, there is no allegation that Defendant did anything other than what the Agreement instructed it to do. Accordingly, Plaintiff does not plead facts sufficient to sustain a breach of contract claim.

### C.      Unjust Enrichment

In addition to alleging breach of contract, Pacific claims that PNC has unjustly collected and benefited from payments made by Pacific after May 2010 while providing nothing in return. Plaintiff cannot state a claim for unjust enrichment for two reasons.  First, under Ohio law, a plaintiff generally cannot recover under a claim for unjust enrichment where an express contract covers the subject of the dispute.  *See Rorig v. Thiemann*, No. 1:05CV801, 2007 WL 2071909, at *10 (S.D. Ohio July 17, 2007) (citing *Randolph v. New England Mut. Life Ins. Co.*, 526 F.2d 1383, 1387 (6th Cir. 1975)); Beatley v. Beatley, 160 Ohio App. 3d 600, 617, 828 N.E.2d 180, 192–93 (2005) ("Unjust enrichment is an equitable doctrine to justify a quasi-contractual remedy that operates in the absence of an express contract or a contract implied in fact to prevent a party from retaining money or benefits that in justice and equity belong to another."); *Wolfer Ent., Inc. v. Overbrook Dev. Corp.*, 132 Ohio App. 3d 353, 357, 724 N.E.2d 1251, 1253 (1999) ("A party seeking a remedy under a contract cannot also seek equitable relief under a theory of unjust enrichment or quantum meruit, because the terms of the agreement define the parties' relationship in the absence of fraud, bad faith or illegality.").

Second, Plaintiff has not alleged facts that if taken as true would prove Defendant unjustly retained money that in equity belongs to Plaintiff.  *See Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 476 F. Supp. 2d 809, 826 (S.D. Ohio 2007) ("In order to find that defendants were unjustly enriched, thus justifying a contract implied in law, the evidence must clearly and convincingly show: (1) a benefit conferred by the plaintiff upon the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.")  As previously discussed, Pacific entered into an agreement with PNC to make lease payments for

use of certain equipment.  Pacific had the option, after a certain time, to purchase the equipment, terminate the lease, or do nothing and let the lease automatically renew.  Pacific cannot assert a claim that PNC was unjustly enriched by alleging that PNC received payments in accordance with terms of an agreement for which both parties contracted and of which both parties had knowledge.

### D.    Conversion

Plaintiff's final claim is that Defendant wrongfully retained "overpayments" and "converted them to [its] own use."  (Complaint ¶ 14, Doc. 2 at PageID 16.)  "To prevail on a conversion claim, a plaintiff must demonstrate: (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of the plaintiff's property right, and (3) damages."  Alexander v. Motorists Mut. Ins. Co., No. C–110836, 2012 WL 3711299, at *3 (Ohio Ct. App. Aug. 29, 2012).  Plaintiff's conversion claim fails because Pacific fails to allege facts demonstrating that it had a right to possession of the lease payments or that PNC *wrongfully* took control over or possession of the money in question.  To the contrary, Defendant's actions were entirely consistent with the Agreement voluntarily entered into by both parties.

**V.     CONCLUSION**

For the reasons stated above, the Court finds that Defendant is entitled to judgment on the

pleadings as to all of Plaintiff's claims.  Defendant's motion is therefore GRANTED, and

Plaintiff's complaint is DISMISSED.

**IT IS SO ORDERED.**


S/Susan J. Dlott
Chief Judge Susan J. Dlott
United States District Court